UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MIMPSI HAMILTON, | ) | CASE NO. 3:16CV1083 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF | ) | REPORT AND RECOMMENDATION |
| SOCIAL SECURITY, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Mimpsi Hamilton ("Plaintiff") requests judicial review of the final decision of

the Commissioner of Social Security ("Defendant") denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  ECF Dkt. #2.  In her

brief on the merits, filed on August 5, 2016, Plaintiff asserts that the administrative law judge's

("ALJ") finding at step three of the sequential evaluation is not supported by substantial

evidence.  ECF Dkt. #11 at 4-10.  Defendant filed a response brief on October 20, 2016.  ECF

Dkt. #14.  On November 3, 2016, Plaintiff filed a reply brief.  ECF Dkt. #15.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the

ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I.    PROCEDURAL HISTORY

On June 26, 2012, Plaintiff filed applications for DIB and SSI, alleging disability

beginning August 31, 2006.  ECF Dkt. #10 ("Tr.") at 30.[2]  Plaintiff's claims were denied initially

and upon reconsideration.  *Id.*  Plaintiff then requested a hearing, which was held on June 11,

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

2014.  *Id.* at 45.  On October 6, 2014, the ALJ issued a decision denying Plaintiff's claims.  *Id.* at 27.  Subsequently, the Appeals Council denied Plaintiff's request for review.  *Id.* at 1. Accordingly, the October 6, 2014, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's October 6, 2014, decision on May 5, 2016.  ECF Dkt. #2.  On August 5, 2016, Plaintiff filed a brief on the merits.  ECF Dkt. #11.  Defendant filed a response brief on October 20, 2016.  ECF Dkt. #14. On November 3, 2016, Plaintiff filed a reply brief.  ECF Dkt. #15.

## II.     RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

Plaintiff asserts that her height is 5' 6", and that in order to have a body mass index ("BMI") of less than 17.50 she would need to weigh 108 pounds or less.[3]  ECF Dkt. #11 at 8. Continuing, Plaintiff provides the following list of medical evidence showing Plaintiff's weight from December 13, 2012, to February 25, 2014:

| | |
|---|---|
| December 12, 2012 | Weight 106 |
| February 5, 2013 | Weight 103 |
| February 13, 2013 | Weight 103 |
| March 1, 2013 | Weight 103 |
| September 21, 2013 | Weight 108 |
| October 3, 2013 | Weight 106 |
| January 16, 2014 | Weight 103.5 |
| February 25, 2014 | Weight 104 |

ECF Dkt. #11 at 8 (citing Tr. at 622, 724, 769, 800, 824, 834, 925, 928, 944).

Defendant cites medical evidence in which it was noted that Plaintiff was not following her treatment as prescribed.  *See* ECF Dkt. #14 at 4-5.  On May 25, 2012, it was noted by a nurse practitioner that Plaintiff wanted her medications refilled as is had "been weeks since [Plaintiff's] had [the medications], and that Plaintiff had been "off medications for [the] past month."  Tr. at 549.   The nurse practitioner noted that Plaintiff was "well nourished," and that she was diagnosed with Addison's Disease in 2000 and had a history of weight loss.  *Id.*

---

[3]Both Plaintiff and Defendant chose to include very limited recitations of the medical evidence presented in this case.  Likewise, both parties say little about the testimonial evidence presented during the hearing held on June 11, 2014.  Since the only issue raised by Plaintiff is regarding the ALJ's finding at step three of the sequential evaluation, it is not necessary to expand upon the medical evidence or testimonial evidence cited by Plaintiff and Defendant, as the medical evidence presented by the parties is sufficient to resolve this issue.

On June 30, 2012, Chandra Veerla, M.D., stated that Plaintiff had "known Addison's Disease and [had] some issues with compliance." Tr. at 567.  Among her impressions of Plaintiff, Dr. Veera included "noncompliance." *Id.* at 568.  On October 23, 2013, Sirisha Donepudi, M.D., indicated that Plaintiff had been noncompliant with her prescribed treatment. Tr. at 798.  Dr. Donepudi stated that Plaintiff's fatigue was "most likely due to uncontrolled hypothyroidism and not taking her Hydrocortisone in the past." *Id.*  On January 16, 2014, Dr. Donepudi encouraged Plaintiff to improve compliance with her medications and stated that the etiology for her weight loss was not clear but "could definitely be due to inadequately treated adrenal insufficiency." *Id.* at 945.

At the hearing held on June 11, 2014, Plaintiff testified that the onset date for her Addison's Disease was in 2000. Tr. at 59.  Continuing, Plaintiff testified that she thought that she continued to work until 2006, although she was not certain about the year. *Id.* at 51. Plaintiff testified that she experienced fatigue, but when questioned as to whether there were other ways she was affected by Addison's Disease, Plaintiff testified:

> No, I mean I get – I'm really weak, but no, just sleeping a lot and get wore out easily.  But that's the only thing. [sic]

Tr. at 54.

### III.    RELEVANT PORTIONS OF THE ALJ'S DECISION

After holding the hearing on June 11, 2014, the ALJ issued a decision on October 6, 2014. Tr. at 27.  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since August 31, 2006, the alleged onset date. Tr. at 32.  Continuing, the ALJ determined that from August 31, 2006, through April 18, 2007, Plaintiff had the following severe impairments: Addison's Disease; an organic mental disorder; and an affective disorder. *Id.* Further, the ALJ determined that for the period of April 19, 2007, to the date of the decision, Plaintiff had the following severe impairments: Addison's Disease; chronic obstructive pulmonary disease; and an organic mental disorder. *Id.* at 33.  The ALJ then found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 34.

After consideration of the record, the ALJ found that for the period from March 31, 2006, through April 18, 2007, Plaintiff retained the residual functional capacity ("RFC") to perform work at the light exertional level subject to the following restrictions and limitations: occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing and stooping; and avoiding concentrated exposure to extremes of heat and cold, humidity, hazards, work at unprotected heights, and work on slippery or uneven surfaces. Tr. at 35. The ALJ further indicated that Plaintiff retained the mental capabilities to: perform at least simple tasks; perform more detailed tasks which were familiar and well rehearsed; and sustain simple tasks in a setting where some flexibility would be allowed to schedule breaks. *Id.*

For the period of April 19, 2007, to the date of the decision, the ALJ determined that Plaintiff had the RFC to perform work at the light exertional level subject to the following restrictions and limitations: occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing and stooping; and avoiding concentrated exposure to extremes of heat and cold, humidity, hazards, work at unprotected heights, and work on slippery or uneven surfaces. Tr. at 35. The ALJ further indicated that Plaintiff retained the mental capabilities to: perform at least simple tasks; and perform more detailed tasks which were familiar and well rehearsed. *Id.*

Following the RFC findings, the ALJ determined that Plaintiff remained capable of performing her past relevant work as a packager at all times from August 31, 2006, through the date of the decision, and that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. at 37. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 31, 2006, through the date of the decision. *Id.* at 38.

**IV.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.   If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.   If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**V.**    **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a

preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ's finding at step three of the sequential evaluation that none of Plaintiff's impairments met or medically equaled any of the listed impairments is not supported by substantial evidence, and that the ALJ did not apply the correct legal criteria in when rendering the determination. ECF Dkt. #11 at 4. Specifically, Plaintiff claims that while the ALJ indicated which of the psychological listings she considered and why the requirements of each had not been satisfied, the ALJ failed to specify any physical listings that she considered as a part of her evaluation. *Id.* at 5. Additionally, Plaintiff states that the non-examining state-agency opinions on which the ALJ relied failed to consider the application of any physical listings whatsoever. *Id.*

According to Plaintiff, the ALJ's findings and opinion regarding her failure to meet or equal a physical listing is in error, and she meets the prima facie requirements for Listing 5.08, via Section 9.00(B)(4), at least beginning in late 2012 through February 2014.[4] ECF Dkt. #11 at 5. Plaintiff then provides Section 9.00(B)(4) and Listing 5.08:

> Section 9.00(B)(4): <u>Adrenal gland disorders</u> affect bone calcium levels, blood
> pressure, metabolism, and mental status. We evaluate adrenal-related osteoporosis

---

[4]A distinction is made between "Listing" 5.08 and "Section" 9.00(B)(4) because Listing 5.08 describes the actual criteria required for a claimant to be considered to meet a listed impairment for the purposes of a disability determination, while Section 9.00(B)(4) instead discusses how the Social Security Administration evaluates the effects of adrenal gland disorders.

with fractures that compromises the ability to walk or to use the upper extremities under 1.00; adrenal-related hypertension that worsens heart failure or causes recurrent arrhythmias under 4.00, adrenal related weight loss under 5.00; and mood disorders under 12.00.

Listing 5.08: *Weight loss due to any digestive disorder* despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations within a consecutive 6-month period.

Next, Plaintiff states that there is no indication anywhere in the ALJ's decision demonstrating that the ALJ considered the application of Section 9.00(B)(4), and that she instead relied on the opinions of two state-agency medical reviewers even though the state-agency reviewers failed to indicate that any physical listings were considered and relied on outdated evidence. ECF Dkt. #11 at 6. Continuing, Plaintiff states that the medical opinions on which that ALJ relied were issued on September 28, 2012, and March 11, 2013, and, as such, the state-agency medical reviewers did not have access to the most recent medical evidence available to the ALJ at the time of her decision. *Id.* Further, Plaintiff claims that the opinions from the state-agency medical reviewers did not specify any particular physical listings that had been considered. *Id.* Plaintiff asserts that longitudinal evidence prepared for the June 2014 hearing was not available to the state-agency medical reviewers when they rendered their opinions, and thus the updated evidence was not properly considered by the ALJ. *Id.* at 6-7. Additionally, Plaintiff asserts that counsel was present for Plaintiff at the hearing held on June 11, 2014, and specifically argued that Plaintiff met the requirements of Listing 5.08, via Section 9.00; however, the ALJ still failed to address the applicability of Listing 5.08. *Id.* at 7.

Relying on medical evidence dating from December 12, 2012, to February 25, 2014, Plaintiff asserts that she meets the requirements of Listing 5.08.[5] ECF Dkt. #11 at 8. Based on this medical evidence, Plaintiff asserts that she has established that, at least during the time period beginning in late 2012, she met the requirements for Listing 5.08 and it was paramount that the ALJ explain her consideration of the Listing. Accordingly, Plaintiff avers that the ALJ's failure to explain her consideration of Listing 5.08 prevents meaningful review by the Court, and the ALJ's finding at step three is not supported by substantial evidence. *Id.* at 9-10.

---

[5]*See supra*, at 2.

Finally, Plaintiff claims that the state-agency medical opinions relied upon by the ALJ were based on evidence that was outdated and the opinions were not based on new evidence received at the ALJ level, and therefore the ALJ erred by giving the opinions great weight.  ECF Dkt. #11 at 10.  Plaintiff asserts that the ALJ should have obtained an updated medical expert opinion regarding the applicability of the listings since additional medical evidence was received that may have changed the opinions of the state-agency medical reviewers.  *Id.*

Defendant first asserts that Plaintiff cannot be entitled to DIB unless she can establish that she was disabled on December 31, 2011, her date last insured.  ECF Dkt. #14 at 5.  Continuing, Defendant claims that Plaintiff cannot be entitled to DIB in this case because the evidence she relies upon when attempting to establish disability dates from late 2012.  *Id.* (citing ECF Dkt. #11 at 6).  Defendant is correct.  In her attempt to show that the ALJ erred at step three of the sequential evaluation, Plaintiff relies entirely on evidence "[b]eginning in late 2012" to establish that she meets the requirements of Listing 5.08.  ECF Dkt. #11 at 6-10.  As Plaintiff does not assert that the ALJ erred in determining that she was not disabled as of her date last insured, Plaintiff cannot be entitled to DIB.  *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (claimant is entitled to DIB only if she became disabled on or before the date last insured).  Accordingly, only Plaintiff's entitlement to SSI remains at issue in this case.

Regarding Plaintiff's argument that the ALJ failed to consider Listing 5.08, Defendant avers that the ALJ was not required to consider this listing because Plaintiff "clearly does not meet" Listing 5.08.  ECF Dkt. #14 at 5 (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed.Appx. 639, 641 (6th Cir. 2013)).  Defendant cites the Supreme Court of the United States, which explained:

> For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223, 2016 WL 5745077 (C.D. Cal. Sept. 20, 2016) (emphasis original).  Continuing, Defendant asserts that Plaintiff cannot meet all of the criteria of Listing

5.08 because she is unable to show "[w]eight loss... despite continuing treatment as prescribed."[6]
ECF Dkt. #14 at 5.

> In support of this position, Defendant quotes the following portion of the ALJ's decision:
>
> In January 2014, [Plaintiff] had a follow-up visit with a treating physician who provided a progress report very similar to the reports from the treating physicians over the previous several years demonstrating an essentially stable condition, but also indicating problems with compliance with treatment medications. One problem noted was some weight loss of a few pounds, which her physician said could be related to adrenal insufficiency. The report states that "... [Plaintiff] was there for follow-up of Addison's Disease and primary hypothyroidism. [Plaintiff] was noncompliant with her medications due to lack of insurance in the past but now in spite of drug coverage she remains noncompliant. [Plaintiff] is currently taking hydrocortisone 10 mg in the morning and 10 mg in the evening along with Flrineg 0.1 mg qd. [Plaintiff] reports having fatigue, but she does not have dizziness, nausea, or vomiting. [Plaintiff] lost 71lb since last visit. [Plaintiff] had TAH in 11/13. [Plaintiff] has primary hypothyroidism and she is currently taking 150 mcg of Levothyroxine. [Plaintiff] does not report anxiety, tremors, or palpitations. [Plaintiff] is missing her hydrocortisone and her LT4 at least 2 times a week.

ECF Dkt. #14 at 6 (citing Tr. at 37).[7]  Additionally, Defendant cites to medical evidence showing that Plaintiff failed to continue treatment as prescribed dated: May 25, 2012; June 30, 2012; October 23, 2013; and January 16, 2014.[8]  ECF Dkt. #14 at 6 (citing Tr. at 549, 567-68, 798, 945).  Based on these notations of noncompliance contained in the medical record, Defendant asserts that Plaintiff cannot meet Listing 5.08, and thus, under *Zebley*, the ALJ was not required to consider the Listing. *Id.*

Alternatively, Defendant contends that if the ALJ did error in declining to explicitly consider Listing 5.08, any such error is harmless as any consideration of the Listing could only result in a finding that Plaintiff does not meet the requirements of the Listing per *Zebley*.  ECF Dkt. #14 at 7.  Accordingly, Defendant avers that Plaintiff could not have met Listing 5.08 even if the Listing had been considered, and therefore remand is inappropriate. *Id.*

---

[6]Listing 5.08: *Weight loss due to any digestive disorder* despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations within a consecutive 6-month period.

[7]Defendant quoted an abridged version of this paragraph of the ALJ's decision.  *See* ECF Dkt. #14 at 6.  The undersigned has included the entire paragraph herein for the benefit of the Court.

[8]*See supra*, at 2-3.

Finally, Defendant asserts that the ALJ was not required to submit the new evidence to the state-agency physicians.  ECF Dkt. #14 at 7.  Defendant states that the Sixth Circuit has made clear that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Id.* at 7-8 (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).  According to Defendant, Plaintiff has not specified which state-agency physician's finding would have been changed based on new evidence, which evidence was new, or how such new evidence would have changed a physician's opinion.  Alternatively, Defendant avers that even if Plaintiff has not waived this argument, it is well established that there is no need for an updated opinion where new evidence would not change the findings of a previous opinion.  ECF Dkt. #14 at 8 (citing *Kelly v. Comm'r of Soc. Sec.*, 314 Fed.Appx. 827, 831 (6th Cir. 2009).[9]

Plaintiff's arguments are without merit.  Listing 5.08 requires:

Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive six month period.

Plaintiff cites medical evidence supporting her contention that she can satisfy the BMI component of Listing 5.08.  *See* ECF Dkt. #11 at 8.  However, Plaintiff fails to show that she was continuing treatment as prescribed during the time period during which her BMI fell to levels low enough to satisfy the criteria of Listing 5.08.  For example, the ALJ quoted from one of Plaintiff's treating physicians when stating that "[Plaintiff] was noncompliant with her medications due to a lack of insurance in the past but now in spite of drug coverage she remains noncompliant."  *See* Tr. at 37; ECF Dkt. #14 at 6.

---

[9]Plaintiff quotes the following passage from *Kelly*:

There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time hearing decision is issued.  Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.

314 Fed.Appx. at 831

Additionally, Defendant highlights portions of the record from May 2012, June 2012, October 2013, and January 2014 where it was noted that Plaintiff was noncompliant with her prescribed treatment. *See* ECF Dkt. #14 at 6. Plaintiff asserts that the Court is not free to accept Defendant's post hoc rationalization for the ALJ's action, particularly where, in the instant case, there is no evidence that Listing 5.08 was considered. *See* ECF Dkt. #15 at 1. Plaintiff asserts that the May 2012 and June 2012 references to noncompliance were outdated because Listing 5.08 was not met until December 2012. ECF Dkt. #15 at 2. While the May 2012 and June 2012 notations of noncompliance were made before December 2012, the point at which Plaintiff claims she first met Listing 5.08, these two instances of noncompliance are still relevant insofar as the noncompliance occurred after the alleged onset date and such noncompliance further demonstrates Plaintiff's lengthy trend of noncompliance with prescribed treatment. Plaintiff's history of noncompliance with prescribed medical treatment can be dated back to at least 2010. Tr. at 385-429. Again, while these records do not necessarily demonstrate noncompliance during the time in which Plaintiff alleges she met the requirements of Listing 5.08, the records do demonstrate that Plaintiff was consistently noncompliant with prescribed medical treatment in the years leading up to the alleged onset of medical impairments sufficient to satisfy Listing 5.08.

Moreover, there are medical records from the period during which Plaintiff claims that she met the requirements of List 5.08. In October 2013, it was noted multiple times by Dr. Donepudi that Plaintiff was noncompliant with prescribed medical treatment. Tr. at 798. Plaintiff attempts to explain away this noncompliance by indicating that Dr. Donepudi stated that Plaintiff had "not been taking her medication for the last several weeks," and claiming that the inclusion of "the last several weeks" in Dr. Donepudi's assessment implies that Plaintiff was taking the medication regularly in the past. *See* ECF Dkt. #15 at 2. However, Plaintiff ignores the other portions of Dr. Donepudi's assessment indicating the following: "[Plaintiff] is noted to have hyperpigmentation, which has worsened recently, which could be due to noncompliance with her medications"; "[d]iscussed the importance of compliance"; and [Plaintiff's] fatigue is most likely due to uncontrolled hypothyroidism and not taking her Hydrocortisone in the past."

-11-

Tr. at 798.  In fact, it appears that Dr. Donepudi's statement that Plaintiff had not been taking her medication for the "last several weeks" was specific to her Levothyroxine, rather than all of her prescribed medications.  *See id.*  Adding to the medical evidence suggesting that Plaintiff was noncompliant with her medications during the period in which she argues she met Listing 5.08 is Dr. Donepudi's notation in January 2014 that Plaintiff was encouraged to improve her compliance with medications.  *Id.* at 945.

Insofar as Plaintiff claims that Defendant engaged in post hoc rationalization when using these instances to explain the ALJ's decision, this argument misses the mark.  Defendant asserts that the ALJ was not required to consider Listing 5.08 because Plaintiff "clearly [did] not meet" the Listing.  In *Sheeks*, the Sixth Cicuit held:

> The relevant regulations require the ALJ to find a claimant disabled if [she] meets a listing.  Yet they do not require the ALJ to address every listing - and with ample reason.  There are a hundred or so listings.  In the normal course, as a result, the ALJ need not discuss the listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ.  If, however, the record "raise[s] a substantial question as to whether the claimant could qualify as disabled" under a listing, the ALJ should discuss the listing.

544 Fed.Appx. at 641.  Continuing, the Sixth Circuit held:

> [A claimant] must do more than show the ALJ's decision leaves open the question whether [she] meets [a listing]. [The claimant] must show that the open question is a *substantial* one that justifies a remand.

*Id.* at 641-42 (emphasis original).  The undersigned recognizes that Listing 5.08 was raised before the ALJ in the instant case at the hearing; however, *Sheeks* does not require that an ALJ address each listing raised by Plaintiff, but rather grants an ALJ greater deference to exclude discussion of listing not raised by a claimant.  The operative question remains whether the record raises a substantial question as to whether the claimant could qualify as disabled under a listing.  *See id.*

Plaintiff has not shown that there is a substantial  question as to whether she could qualify as disabled under Listing 5.08.  As discussed above, the Supreme Court of the United States has explained:

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

-12-

*Zebley*, 493 U.S. at 530.  Here, Plaintiff cannot show that she met the portion of Listing 5.08 requiring that she experienced weight loss due to any digestive disorder despite continuing treatment as prescribed.  The record is replete with evidence indicating that Plaintiff was noncompliant with prescribed treatment.[10]  In the face of the large amount of evidence indicating that Plaintiff was noncompliant with prescribed treatment, her only response is to claim that the Court may only take into account medical evidence from a time period prescribed by the Plaintiff, and that there was a single indication that Plaintiff had "not been taking her medication for the last several weeks," which, as discussed above, is not persuasive evidence that Plaintiff had been compliant but for those several weeks.  It is clear from the record that Plaintiff is unable to satisfy the requirements of Listing 5.08.  Accordingly, the ALJ was not required to discuss Listing 5.08.[11]  *See Zebley*, 493 U.S. at 530; *Sheeks*, 544 Fed.Appx. at 641-42.

Plaintiff also claims that the ALJ erred in affording great weight to the opinions of the state-agency physicians because the opinions should have been afforded weight "only insofar as they were supported by evidence in the case record, and because they were not based on new evidence received at the ALJ level."  ECF Dkt. #11 at 10.  Despite her claim, Plaintiff fails to state what new evidence she believes would change a physician's opinion, or allege how this new evidence would change any physician's opinion.  *See Id.*  Giving Plaintiff the benefit of the doubt and assuming that her presentation regarding new evidence is not perfunctory and thus waived, Plaintiff has failed to show, or argue, how this new evidence would change any physician's opinion.  Accordingly, the ALJ was not required to submit any new evidence to the state-agency physicians.  *See McPherson*, 125 F.3d at 995-96; *Kelly*, 314 Fed.Appx. at 831.

---

[10]*See supra* at 10-12.

[11]Defendant also asserts that if the Court determines that the ALJ should have considered Listing 5.08, the ALJ's decision declining to consider Listing 5.08 was harmless error as Plaintiff cannot meet the plain language requirements of Listing 5.08. ECF Dkt. #14 at 7. The undersigned agrees. Should the Court determine that the ALJ erred by declining to consider Listing 5.08, the evidence, as discussed herein, demonstrates that Plaintiff would be unable to satisfy the criteria of Listing 5.08 as she was consistently noncompliant with prescribed medical treatment.

For the above stated reasons, the ALJ's finding at step three of the sequential evaluation is supported by substantial evidence and Plaintiff's arguments are without merit.

## VII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: April 5, 2017                              */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).